1

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12                     ----oo0oo----

13

KEN SINCLAIR,
14                                  NO. CIV. 07-0611   FCD/DAD
         Plaintiff,
15
                                    MEMORANDUM AND ORDER
16       v.

THE SERVICEMASTER COMPANY, a
17  Delaware corporation,

18          Defendant.

19
                       ----oo0oo----
20

21      This matter comes before the court on defendant The

22  ServiceMaster Company's ("ServiceMaster") motion to dismiss five

23  of plaintiff Ken Sinclair's ("plaintiff") claims for relief

24  pursuant to Rule 12(b)(6) of the Federal Rules of Civil

25  ///

26  ///

27  ///

28  ///

Procedure.  For the reasons set forth below,[1] defendant's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[2]

Plaintiff was a long term employee of ServiceMaster. (Pl.'s Compl., filed Mar. 30, 2007 ("Compl."), ¶ 5.)  In 1998, plaintiff entered into a Founder's Employment Agreement ("Employment Agreement") as one of the principals and founding members of Four Season Landscape Maintenance, Inc., a predecessor corporation of ServiceMaster.  (Id.)  The Employment Agreement was for a five-year term, which then continued on a year-to-year basis upon the same terms and conditions.  (Id.)  The Employment Agreement binds successor corporations, which plaintiff alleges includes ServiceMaster.  (Id. ¶ 6 (citing Employment Agreement, Ex. A to Compl., ¶ 10).)

The Employment Agreement protects plaintiff's employment with ServiceMaster.  (Id. ¶ 7.)  The Agreement permits ServiceMaster to terminate plaintiff for "cause" based upon a "willful and material breach," "gross negligence" or "willful dishonesty, fraud or misconduct." (Id.)  Further, ServiceMaster is required to provide plaintiff with 10 days written notice and an opportunity to cure any willful and material breach of the Employment Agreement before termination.  (Id.)

In 2001, Plaintiff received a Change in Control Severance Agreement ("CIC Agreement") as part of his executive compensation

---

[1]     Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[2]     The facts of this case are taken from plaintiff's allegations in the complaint.

1  package.  (Id. ¶ 8.)  The CIC Agreement was designed to provide

2  protection to ServiceMaster's management team in the event of

3  certain reorganizations, mergers, or acquisitions.  (Id.)  In

4  2005, Plaintiff was granted a restricted stock award of 10,000

5  shares under the ServiceMaster 2003 Equity Incentive Plan.  (Id.

6  ¶ 14.)  The 2005 stock award was given pursuant to the terms of

7  The ServiceMaster Company Restricted Stock Award Agreement.

8  Plaintiff was also promised, both orally by Rick Ascolese

9  ("Ascolese") and confirmed in a written memorandum, that he would

10  receive restricted stock awards of 10,000 shares in 2006, 10,000

11  shares in 2007, and 8,000 shares in 2008.  (Id.)

12  ServiceMaster announced on November 28, 2006 that its Board

13  of Directors had decided to explore strategic alternatives

14  designed to maximize value for shareholders.  (Id. ¶ 17.)  In

15  January and February of 2007, plaintiff discussed his 2006 bonus

16  and expressed concerns to his immediate supervisor, Ascolese,

17  that plaintiff had not received his 2007 10,000 share restricted

18  stock award.  (Id. ¶ 18.)  Plaintiff did not receive an answer,

19  and plaintiff again pressed Ascolese for information about the

20  stock award on February 19 and 20, 2007.  (Id.)  Plaintiff did

21  not receive a definitive answer, and Ascolese told him that there

22  were "many unknowns as it relates to the potential change in

23  control."  (Id. ¶ 20.)

24  ServiceMaster terminated plaintiff's employment without

25  notice on March 8, 2007.  (Id.)  The termination was allegedly

26  for "cause" and was effective March 15, 2007.  (Id. ¶ 20.)  On

27  March 19, 2007, ServiceMaster announced that it had entered into

28  ///

3

a definitive merger agreement to be acquired by an investment
group.  (<u>Id.</u> ¶ 23.)

Plaintiff alleges that ServiceMaster's Board of Directors
was aware of a change in control or attempted change in control
prior to plaintiff's termination.  (<u>Id.</u> ¶ 20.)  Plaintiff
further alleges that there was no cause for his termination and
that the true reason for his termination was to deny him
compensation due and owing from ServiceMaster, which includes the
restricted stock agreement, accrued and unused vacation time, and
benefits due under the CIC Agreement.  (<u>Id.</u> ¶ 20.)

Plaintiff alleges that ServiceMaster's actions in
terminating plaintiff are in breach of both the CIC Agreement and
the restricted stock agreement.  As such, plaintiff contends that
he is due all benefits under both agreements.  (<u>Id.</u> ¶¶ 24-26.)
Furthermore, ServiceMaster did not fully compensate plaintiff
following his wrongful termination in violation of California
Labor Code sections 201 and 227.3.  (<u>Id.</u> ¶ 27.)  ServiceMaster
failed to pay for plaintiff's vacation time earned but not used
and failed to provide plaintiff with his restricted stock award
for 2007.  (<u>Id.</u>)

On March 30, 2007, plaintiff filed this civil action against
defendant, alleging seven claims for relief.  Defendant now moves
to dismiss five of plaintiff's claims for failure to state a
claim upon which relief may be granted, pursuant to Federal Rule
of Civil Procedure 12(b)(6): (1) wrongful termination in
violation of public policy, (2) breach of written contract for
the Change in Control Severance Agreement, (3) breach of written
contract for the restricted stock award, (4) breach of the

4

1  covenant of good faith and fair dealing, and (5) intentional

2  infliction of emotional distress.[3]

3  **STANDARD**

4      On a motion to dismiss, the allegations of the complaint

5  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

6  (1972).  The court is bound to give plaintiff the benefit of

7  every reasonable inference to be drawn from the "well-pleaded"

8  allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>

9  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

10  need not necessarily plead a particular fact if that fact is a

11  reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

12      Nevertheless, it is inappropriate to assume that the

13  plaintiff "can prove facts which it has not alleged or that the

14  defendant[] ha[s] violated the . . . laws in ways that have not

15  been alleged."  <u>Associated Gen. Contractors of Cal., Inc. v. Cal.</u>

16  <u>State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  Moreover,

17  the court "need not assume the truth of legal conclusions cast in

18  the form of factual allegations."  <u>United States ex rel. Chunie</u>

19  <u>v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

20      Ultimately, the court may not dismiss a complaint in which

21  the plaintiff has alleged "enough facts to state a claim to

22  relief that is plausible on its face."  <u>Bell Atlantic Corp. v.</u>

23  <u>Twombly</u>, 127 S.Ct. 1955, 1974 (2007).  Only where a plaintiff has

24  not "nudged [his or her] claims across the line from conceivable

25  to plausible," is the complaint properly dismissed.  <u>Id.</u>  "[A]

26  court may dismiss a complaint only if it is clear that no relief

27

28      [3]  Defendant did not move to dismiss plaintiff's claims
   for failure to pay wages and for declaratory relief.

5

could be granted under any set of facts that could be proved

consistent with the allegations." Swierkiewicz v. Sorema N.A.,

534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spaulding, 467

U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider

only the complaint, any exhibits thereto, and matters which may

be judicially noticed pursuant to Federal Rule of Evidence 201.

See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th

Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.   Choice of Law**

This court has jurisdiction based upon the parties'

diversity of citizenship.  Therefore, state law controls on all

substantive issues, including contractual interpretation issues.

Sherman v. Mutual Benefit Life Ins. Co., 633 F.2d 782, 784 (9th

Cir. 1980).  A district court sitting in diversity must apply the

choice of law rules of the forum state.  Ledesma v. Jack Stewart

Produce, Inc., 816 F.2d 482, 484 (9th Cir. 1987).

The Change in Control Agreement provides that "[t]he

interpretation, construction and performance of this Agreement

shall be governed by and construed and enforced in accordance

with the internal law of the State of Illinois without regard to

the principle of conflict of laws." (CIC Agreement ¶ 14.)  Under

California law, absent the presence of strong public policy

requiring application of California law, the intention of the

parties to apply Illinois law should govern.  Consolidated Data

Terminals v. Applied Digital Data, 708 F.2d 385, 390 n.3 (9th

Cir. 1983); see Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1402 (9th Cir. 1986).  Because the court is not aware of any such strong public policy and because the parties have not raised any argument as to why California law should overrule the choice of law provision, the court will apply Illinois state contract law to the interpretation of the CIC Agreement, including the covenant of good faith and fair dealing as it pertains to the CIC Agreement.

The other claims in this case involve tort law and the stock award agreement, neither of which are controlled by the CIC Agreement's choice of law provision.[4]  "California law requires an analysis of the interests of states involved to determine the law that most appropriately applies to each issue."  Consolidated Data Terminals, 708 F.2d at 390 n.3.  Because the alleged actions took place in California and because neither party has raised any argument why California law should not apply, the court concludes that California law should govern all claims not arising out of the CIC Agreement.

**B.   Wrongful Termination in Violation of Public Policy**

Defendant contends that plaintiff's allegations are insufficient to state a claim for wrongful termination in violation of public policy because a private contractual dispute between an employer and employee does not rise to the level of a fundamental public policy.  (Motion, filed May 21, 2007 ("Mot."), 6-7.)  Plaintiff alleges that defendant terminated plaintiff's employment in order to avoid paying his wages and compensation

---

[4]     As discussed below, plaintiff's stock award claim is premised upon the Ascolese memo, which does not contain a choice of law provision.

1  due, including vacation time earned but not used,[5] in violation

2  of California Labor Code §§ 201 and 227.3.[6]  (Compl. ¶¶ 27, 30.)

3      Wrongful discharge actions that involve a cause of action

4  for termination in violation of public policy are "limited to

5  those claims finding support in an important public policy based

6  on a statutory or constitutional provision." Green v. Ralee

7  Eng'g Co., 19 Cal. 4th 66, 79 (1998). California Labor Code §

8  201 states that "[i]f an employer discharges an employee, the

9  wages earned and unpaid at the time of discharge are due and

10 payable immediately."  Cal. Lab. Code § 201 (Deering 2007).  "The

11 Legislature's decision to criminalize violations of the prompt

12 payment policy supports [the] contention the policy involves a

13 broad public interest . . . ." Gould v. Maryland Sound Indus.,

14 Inc., 31 Cal. App. 4th 1137, 1147 (1995) (citing Cal. Lab. Code §

15 216 (Deering 2007) (providing that any employer who, "[h]aving

16 the ability to pay, willfully refuses to pay wages due and

17 payable after demand has been made" is guilty of a misdemeanor)).

18 Thus, if the employer discharged plaintiff "in order to avoid

19 paying him the commissions, vacation pay, and other amounts he

20 had earned, it violated a fundamental public policy of this

21 state." Id.

22 ///

23

---

24     [5]  Plaintiff also alleges that defendant failed to provide

25 plaintiff with his restricted stock award for 2007.  However, as
   discussed, infra, the court finds that, as alleged, the stock

26 award is not legally enforceable.

27     [6]  Defendant argues that plaintiff fails to identify
   specific statutory provisions to support his complaint. (Mot. at

28 8.)  However, plaintiff asserts these specific Labor Code
   sections in the factual allegations (Compl. ¶ 27) and
   incorporates them by reference in this claim for relief.

1   To the extent plaintiff alleges his termination was intended
2   to avoid payment of his accrued vacation time, his claim for
3   wrongful termination in violation of public policy is valid.
4   However, California public policy does not prohibit termination
5   of employees in order to avoid paying *future* wages not yet
6   earned.   Thus, plaintiff's allegation that defendant terminated
7   his employment in order to avoid paying any future wages or
8   compensation due fails to state a claim for wrongful termination
9   in violation of public policy.

10   Defendant relies on <u>Lett v. Paymentech, Inc.</u>, 81 F. Supp. 2d
11   992 (N.D. Cal. 1999), to argue that plaintiff does not have a
12   wrongful termination claim.   However, the allegations in
13   plaintiff's complaint are distinguishable from those presented in
14   <u>Lett</u>.   The <u>Lett</u> court held that there is not necessarily a
15   wrongful termination claim where an employee terminates her own
16   employment and there is a dispute about compensation due.   <u>Id.</u> at
17   1002.   The court was concerned that such a claim "offers no
18   distinction that would allow a court to separate garden variety
19   disputes from those resonating with public policy concerns."   <u>Id.</u>
20   However, the <u>Lett</u> court noted that "<u>Gould</u> is distinguishable in
21   that the adverse job action was taken by the defendant . . ."
22   <u>Id.</u>   This same distinction applies to the present case.   Because
23   plaintiff alleges that defendant terminated his position in order
24   to avoid payment of wages already accrued, plaintiff's claim is
25   not precluded by <u>Lett</u>.

26   For the reasons above, defendant's motion to dismiss
27   plaintiff's cause of action for wrongful termination in violation
28   of pubic policy is GRANTED IN PART and DENIED IN PART.   To the

extent that plaintiff alleges defendant terminated plaintiff's
employment to avoid paying wages already earned, including
vacation time accrued but not used, defendant's motion is DENIED.
To the extent that plaintiff alleges defendant terminated
plaintiff's employment to avoid payment of future wages or
benefits not yet earned, defendant's motion is GRANTED.

**C.   Breach of Contract**

**1.   Change in Control Severance Agreement**

Defendant contends it did not breach the CIC Agreement
because there was not a Change in Control event[7] prior to
plaintiff's termination and therefore the CIC Agreement is
inapplicable. (Mot. at 3.) Defendant argues that in order to
receive any benefits under the CIC Agreement, the employee must
be terminated during the "termination period," which is the two
years *following* a Change in Control. (Mot. at 3 (citing CIC
Agreement ¶¶ 1(h), 3(a)).) Defendant argues that even in the
light most favorable to plaintiff, a Change in Control event did
not take place until the March 19, 2007 announcement of a
definite merger agreement,[8] four days after plaintiff's
termination. (Mot. at 4). Defendant seeks dismissal because a

---

[7]   A "Change in Control" is defined as the acquisition by
any person or entity of 25% of the outstanding stock shares or an
equivalent voting power of ServiceMaster; a material change in
ServiceMaster's Board of Directors; the consummation of a
reorganization, merger, consolidation, sale or other disposition
of all or substantially all of ServiceMaster's assets; or the
consummation of a plan to liquidate or dissolve ServiceMaster.
(CIC Agreement ¶ 1(d).)

[8]   Defendant maintains that this merger agreement was not
in fact a Change in Control event as defined in the CIC
Agreement. (Motion at 4). However, as discussed below,
plaintiff's complaint alleges that the terms of the CIC Agreement
apply because defendant's Board of Directors had knowledge of a
Change in Control event prior to his termination.

Change in Control event did not precede plaintiff's termination
on March 15, 2007.  (Mot. at 4.)

However, plaintiff alleges that defendant's Board of
Directors were aware of a Change in Control or attempted Change
in Control prior to plaintiff's termination.  (Complaint ¶ 20).
Paragraph nine of the CIC Agreement, entitled "Scope of
Agreement," states that "any termination" of employment
"following a Change in Control *or the Board's becoming aware of
an attempted Change in Control* shall be subject to all of the
provisions of this Agreement." (CIC Agreement ¶ 9 (emphasis
added).)  Plaintiff contends that, accepting as true his
allegation that the ServiceMaster Board was aware of an attempted
Change in Control event, his termination is therefore within the
scope of and subject to the provisions the CIC Agreement.

Defendant contends that plaintiff ignores applicable
paragraphs of the CIC Agreement that contradict plaintiff's
assertion that he is due benefits under the terms of the
Agreement and which state that the effective date under the CIC
Agreement is the *actual* date of the Change in Control.  (Reply,
filed June 15, 2007, at 2-3).[9]  Illinois law recognizes that a
"cardinal rule of contract construction is that a document should
be read to give effect to all its provisions and to render them
consistent with one another." Roubik v. Merrill Lynch, Pierce,
Fenner & Smith, 285 Ill. App. 3d 217 (1996) (citing Restatement

---

[9]    Defendant cites in particular paragraphs 1, 3, 7, and 8
of the CIC Agreement.  These passages provide details regarding
"the termination of the contract in Paragraph 8, the requirement
in Paragraph 7 that Sinclair be employed at the time of a Change
in Control, and the precondition in Paragraphs 3 and 1 that
Sinclair be terminated *after* a Change in Control." (Reply at 2
(citing CIC Agreement ¶¶ 1, 3, 7, 8) (emphasis in original).)

(Second) of Contracts § 203(a) and Comment b (1981)).  "Where an inconsistency arises between a clause that is general and one that is more specific, the latter prevails."  <u>Alberto-Culver Co. v. Aon Corp.</u>, 351 Ill. App. 3d 123, 135 (2004) (citing Restatement (Second) of Contracts § 203(c) (1981)).  Plaintiff's assertion that the CIC Agreement applies when defendant's Board *becomes aware of an attempted Change in Control* is internally consistent with the employee's obligation not to leave ServiceMaster without good reason for six months from the date an attempted Change in Control *becomes known to the Board*.  (CIC Agreement ¶ 2.)  Plaintiff's interpretation is also rooted in the language of the specific "scope" section of the CIC Agreement, which prevails under the Illinois rules of contract interpretation.

Furthermore, defendant's proposed construction is inconsistent with the stated intent of the CIC Agreement, which protects management in the event of a Change in Control.  (Compl. ¶ 8; <u>see</u> CIC Agreement, Ex. B to Compl., at 1.)  Defendant's interpretation would allow an end run around its obligations under the CIC Agreement by permitting the protected employee to be terminated without recourse in advance of a Change in Control, so long as the termination precedes the actual date of the change.  <u>See</u> <u>In re Marriage of Olsen</u>, 124 Ill. 2d 19, 25-26 (1988) ("When enforcing a contract, the primary objective is to construe the contract to ascertain the intent of the parties and to give effect to that intent.") (citing <u>United Airlines, Inc. v. City of Chicago</u>, 116 Ill. 2d 311, 318 (1987).

///

1    Plaintiff alleges that contrary to the specific provisions

2 of the CIC Agreement, he was terminated without cause.

3 (Complaint ¶¶ 20, 37.)  Plaintiff further alleges that he did not

4 receive notice of the breach of his duties and responsibilities

5 as required in paragraph 1(c)(1) of the CIC Agreement and that

6 defendant failed to pay benefits due plaintiff under the CIC

7 Agreement.  (Complaint ¶ 37.)  These allegations are sufficient

8 to withstand defendant's motion to dismiss for plaintiff's

9 failure to state a claim for breach of the CIC Agreement.  As

10 such, defendant's motion to dismiss on this ground is DENIED.

11       **2.   Restricted Stock Award**

12    Plaintiff alleges that at the time he was granted his 2005

13 restricted stock award, Rick Ascolese promised him, on behalf of

14 ServiceMaster, further stock awards of 10,000 shares in 2006,

15 10,000 shares in 2007, and 8,000 shares in 2008.  (Compl. ¶ 14.)

16 Ascolese, acting on behalf of defendant, confirmed this promised

17 in a written memorandum ("Ascolese memo") dated March 24, 2005.[10]

18 (Id.)  As clarified in his opposition, plaintiff alleges that,

19 although the award years 2005-2008 are listed in the Ascolese

20 Memo, only the 2005 award is controlled by the terms of The

21 ServiceMaster Company Restricted Stock Award Agreement ("2005

22 Stock Agreement").  Plaintiff contends that the Ascolese memo is

23

24       [10]   Plaintiff refers to the March 24, 2005 memorandum as
25 the "Restricted Stock Agreement."  "Ascolese memo" is used here
   for clarity, as plaintiff also attached in Exhibit C to the
26 complaint a separate agreement that is entitled The ServiceMaster
   Company Restricted Stock Award Agreement ("2005 Stock
27 Agreement"). Plaintiff concedes that the 2005 Stock Agreement has
   not been breached.  (Opp'n at 8).  The court interprets this
28 concession to mean that the 2005 Stock Agreement is attached for
   reference purposes only.  Plaintiff's breach of contract claim is
   thus based solely on the Ascolese memo.

                              13

an enforceable promise to plaintiff of the listed stock awards
for the years 2006, 2007, and 2008, with no requirement of
continued employment.  (Opp'n at 8.)  Plaintiff alleges that
defendant breached this agreement by failing to pay the stock
awards promised in the Ascolese memo.[11]  (<u>Id.</u>)

Defendant argues that plaintiff has failed to state a claim
because the stock memo is not an enforceable contract.  (Reply at
4.)  In order to form a valid and enforceable contract under
California law, it is essential that there be: (1) parties
capable of contracting; (2) their consent; (3) a lawful object;
and, (4) a sufficient consideration.  Cal. Civ. Code § 1550
(Deering 2007); <u>see</u> <u>Binder v. Aetna Life Ins. Co.</u>, 75 Cal. App.
4th 832, 850 (1999) (noting that a manifestation of mutual assent
is required to form a valid contract); <u>see also</u> Restatement
(Second) of Contracts § 17 (1981) ("the formation of a contract
requires a bargain in which there is a manifestation of mutual
assent to the exchange and a consideration.").[12]  "Under

---

[11]   Plaintiff's complaint also alleges that defendant
breached the stock agreement by:

> [A]mong other things, failing to provide plaintiff with
> notice of alleged breach of plaintiff's duties and
> responsibilities as an employee of ServiceMaster;
> failing to provide plaintiff with any reasonable
> opportunity to remedy any alleged breach of plaintiff's
> duties and responsibilities as an employee of
> ServiceMaster; wrongfully terminating plaintiff's
> employment without cause; [and] wrongfully terminating
> plaintiff's employment in violation of public policy .
> . . . (Compl. ¶ 42.)

However, these duties are not contained in the Ascolese
memo, which plaintiff has identified as the operative contract
for this claim.

[12]   The Ascolese memo contains no choice of law provision,
therefore the court applies California state law in analyzing the
(continued...)

14

California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." <u>Ersa Grae Corp. v. Fluor Corp.</u>, 1 Cal. App. 4th 613, 623 (1991).

The Ascolese memo states in relevant part:

> It is with great pleasure that I am able to forward you the attached restricted stock award provided by ServiceMaster [referring to the 2005 Stock Agreement]. As you and I discussed it is important for both of us to feel secure and committed to the future success of TruGreen LandCare.
>
> I also wanted to restate for clarification our commitment to you with this specific program.  You will receive the following stock awards over the below stated four (4) year period.  [List of stock awards for 2005-2008]."  (March 24, 2005 memo from Rick Ascolese to Ken Sinclair, Ex. C to Compl.)

Plaintiff does not allege that the Ascolese memo was a bargained for agreement, nor does plaintiff allege that there was mutual assent for the memo.  The plain language of the memo does not reveal such mutual manifestation of assent by plaintiff and defendant; rather, it merely expresses a statement by defendant of its intention to render a benefit to plaintiff in the future. <u>See</u> <u>Bustamante v. Intuit, Inc.</u>, 141 Cal. App. 4th 199, 208 (2006) ("If there is no evidence establishing a manifestation of assent . . . by both parties, then there is no mutual consent to contract and no contract formation.").  Moreover, there are no definite terms provided in this memo defining the scope of the duties and obligations for each party.  <u>See</u> <u>California Lettuce</u>

---

[12](...continued)
existence of an enforceable contract.  To the extent that the 2005 Stock Agreement does contain a choice of law provision, the court again notes that the 2005 Stock Agreement is at not issue.

1  Growers v. Union Sugar Co., 45 Cal. 2d 474, 481 (1955) ("Where a
2  contract is so uncertain and indefinite that the intention of the
3  parties in material particulars cannot be ascertained, the
4  contract is void and unenforceable.").   Further, there is no
5  allegation of consideration in plaintiff's complaint, nor is
6  consideration clear from the face of the Ascolese memo.   Rather,
7  a plain reading of the Ascolese memo reveals that the alleged
8  contract is more appropriately read as a proposed schedule of
9  future stock awards, without any benefit to defendant as
10 promisor.  See Cal. Civ. Code § 1605 (providing that good
11 consideration of a promise consists of any benefit upon the
12 promisor as an inducement).   Even taking plaintiff's allegations
13 in the light most favorable to him, a plain reading of the
14 Ascolese memo and the allegations in the complaint demonstrate
15 that the Ascolese memo is not an enforceable contract.   See
16 Restatement (Second) of Contracts § 17 (1981).

17      Because on its face the Ascolese memo is not an enforceable
18 contract for plaintiff's 2006-2008 stock awards, plaintiff does
19 not plead sufficient facts to state a claim for breach of written
20 contract.   Thus, defendant's motion to dismiss plaintiff's claim
21 for breach of written contract for the stock award is GRANTED.

22 **D.    Breach of Covenant of Good Faith and Fair Dealing**

23      Plaintiff alleges that the CIC Agreement and the Ascolese
24 memo each contain an implied covenant of good faith and fair
25 dealing.[13]  (Compl. ¶ 45.)  Plaintiff alleges that ServiceMaster
26

27 _____

28          [13]    Plaintiff clarifies in his opposition that he "is not
   claiming breach of an employment contract."  (Opp'n at 8).
   Therefore, this claim is necessarily based only upon the CIC
   Agreement and the Ascolese memo.

                                16

breached this implied covenant by, *inter alia*, failing to act
with good faith and fairness toward plaintiff, unfairly
preventing plaintiff from obtaining benefits under the
agreements, terminating plaintiff without a fair and honest
cause, terminating plaintiff in violation of public policy and in
an unfair manner, and failing to give plaintiff's interests as
much consideration at it gave its own interests.  (Compl. ¶ 46.)

### 1.   CIC Agreement

Defendant moves to dismiss plaintiff's claim for breach of
covenant of good faith and fair dealing concerning the CIC
Agreement because such a cause of action does not exist in
employment contexts under Illinois law.  Defendant argues that
Illinois law should apply to plaintiff's claim for breach of the
CIC Agreement based on the CIC Agreement's choice of law
provision.  Plaintiff fails to discuss whether Illinois law or
California law should apply, but cites only to California case
law in support of his arguments.

In <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459
(1992), the California Supreme Court ruled on the enforceability
of a choice of law agreement directing the application of Hong
Kong law to a breach of contract claim.  The court stated that
"California courts shall apply the principles set forth in
Restatement section 187, which reflects a strong policy favoring
enforcement of such provisions."  <u>Id.</u> at 464-65.  The court also
determined that it "perceive[d] *no fundamental public policy* of
California requiring the application of California law to []
claims based on the *implied covenant of good faith and faith
dealing*."  <u>Id.</u> at 468 (emphasis added).  In light of California's

17

clearly stated public policy favoring the enforcement of choice of law provisions, the California Supreme Court's finding that it perceived no fundamental public policy in applying California law to breach of covenant claims, and both parties' silence as to why the parties' choice of law agreement should not be honored, the court finds that Illinois law governs this claim as it pertains to the CIC Agreement.

Illinois law does not provide an independent tort claim for breach of covenant of good faith and fair dealing. See Cramer v. Insurance Exchange Agency, 174 Ill. 2d 513, 524-25 (1996). Rather, good faith and fair dealing functions as a means of contract interpretation. See id. at 525 ("[T]his contract covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort. [Citations.]"). The Illinois Supreme Court later clarified that "the claim would be proper only in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder." Voyles v. Sandia Mortgage Corp., 196 Ill. 2d 288, 296 (2001). Plaintiff's tort claim does not fall within this narrow exception. As such, his claim for violation of the covenant of good faith and fair dealing pertaining to the CIC Agreement is not recognized by the law of Illinois.

Because the CIC Agreement contains a choice of law provision for Illinois, which does not recognize an independent cause of action in tort for the alleged breach of an implied duty of good faith and fair dealing, defendant's motion to dismiss this claim for breach of covenant of good faith and fair dealing as to the CIC Agreement is GRANTED.

18

**2. Ascolese Memo**

To the extent that plaintiff alleges breach of the covenant of good faith and fair dealing based on the Ascolese memo, the court again notes plaintiff has not alleged a valid and enforceable contract. The California Supreme Court has held that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." <u>Foley v. Interactive Data Corp.</u>, 47 Cal. 3d 654, 683 (1998) (quoting Rest. 2d Contracts, § 205). This covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 349 (2000) (emphasis in original). Therefore, the covenant "cannot be endowed with an existence independent of its contractual underpinnings" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." <u>Id.</u> at 349-350 (internal citations omitted). As set forth above, the Ascolese memo is not, on its face, a contract and imposes no enforceable duties. Therefore, a covenant of good faith and fair dealing cannot be implied from it or create substantive duties owed by defendant.

Because the Ascolese memo is not a contract onto which the implied duty may be imposed, defendant's motion to dismiss this claim for breach of covenant of good faith and fair dealing as to the Ascolese Memo is GRANTED.

**5. Intentional Infliction of Emotional Distress**

Defendant moves to dismiss plaintiff's claim for intentional infliction of emotional distress ("IIED") because it argues that

such a claim is preempted by the exclusivity provision of
California's worker's compensation law.[14]   (Mot. at 17.)
Plaintiff contends that an IIED claim for wrongful termination is
properly established where, as in the present case, there is a
violation of public policy because "[s]uch misconduct clearly
lies outside the exclusive remedy provisions of the Labor Code."
(Opp'n at 10.)

   "A claim for wrongful termination in violation of public
policy is one type of claim that is not barred by the exclusive
remedy provisions of the Workers' Compensation Act." Kovatch v.
Cal. Casualty Management Co., 65 Cal. App. 4th 1256, 1277 (1998)
(citing Shoemaker v. Myers, 2 Cal. App. 4th 1407, 1416-19
(1992)), disapproved on other grounds by Aguilar v. Atlantic
Richfield Co., 23 Cal. 4th 826, 854 (2001).  Violations of public
policy are not expected in the standard course of employment,
therefore such violations lie outside the exclusive remedy
provisions of the California Labor Code.  See Leibert v.
Transworld Sys., 32 Cal. App. 4th 1693, 1706-07 (1995).  As such,
plaintiff's IIED claim is not preempted by worker's compensation
law to the extent that the claim is premised upon defendant's
alleged violation of public policy.

   However, as set forth above, plaintiff has properly alleged
a claim for wrongful termination in violation of public policy
only in regard to his allegations that he was terminated to avoid

---

   [14]   Defendant also argues plaintiff has failed to properly
allege the necessary elements of an IIED claim for lack of the
word "'severe' . . . to modify the term 'emotional distress.'"
(Mot. at 17.)  However, Plaintiff's complaint is sufficient
to fulfill the notice pleading requirement of Federal Rule of
Civil Procedure 8(a).

payment of past wages already earned.  As such, to the extent plaintiff's claim for IIED is premised upon a public policy violation for wrongful termination to avoid payment of future wages not yet earned, defendant's motion to dismiss is GRANTED. To the extent that plaintiff's claim for IIED is premised upon a public policy violation to avoid payment of wages plaintiff has already earned, defendant's motion to dismiss is DENIED.

**C.   Leave to Amend**

In his opposition, plaintiff requests leave to amend the complaint to cure any defects.  Pursuant to Rule 15(a), "leave [to amend] is to be freely given when justice so requires." "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997).  There is no evidence or argument that plaintiff's request for amendment is sought in bad faith, is futile, or would be prejudicial to defendant.  Therefore, plaintiff is granted leave to amend.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART.

(1)  As to plaintiff's claim for wrongful termination in violation of public policy, defendant's motion to dismiss is GRANTED as to plaintiff's allegations he was terminated to avoid payment of future wages, and DENIED as to plaintiff's allegations he was terminated to avoid payment of wages already earned.

(2)  As to plaintiff's claim for breach of written contract for the Change in Control Severance Agreement, defendant's motion to dismiss is DENIED.

(3)  As to plaintiff's claim for breach of contract for the restricted stock award, defendant's motion to dismiss is GRANTED.

(4)  As to plaintiff's claim for breach of covenant of good faith and fair dealing, defendant's motion to dismiss is GRANTED.

(5)  As to plaintiff's claim for intentional infliction of emotional distress, defendant's motion to dismiss is GRANTED as to plaintiff's allegations he was terminated to avoid payment of future wages, and DENIED as to plaintiff's allegations he was terminated to avoid payment of wages already earned.

Plaintiff's motion to amend the complaint is GRANTED. Plaintiff is directed to file a first amended complaint within twenty (20) days of the date of this order.  Defendant is granted thirty (30) days from the date of service of plaintiff's amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: August 2, 2007

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE