UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KEN SINCLAIR

        Plaintiff,

  v.

THE SERVICEMASTER COMPANY, a
Delaware Corporation,

        Defendant.

NO. CIV. 07-611 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on defendant The ServiceMaster Co.'s ("defendant" or "ServiceMaster") motion to compel arbitration and to stay these proceedings pending arbitration of plaintiff Ken Sinclair's ("plaintiff") first amended complaint against it. For the reasons set forth below, defendant's motion is GRANTED.[1]

///
///
///
///

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

**BACKGROUND**[2]

Plaintiff was a long term employee of ServiceMaster. (Pl.'s First Amended Compl., filed Aug. 23, 2007 ("FAC"), ¶ 5.) In 1998, plaintiff entered into a Founder's Employment Agreement ("Employment Agreement") as one of the principals and founding members of Four Season Landscape Maintenance, Inc., a predecessor corporation of ServiceMaster. (Id.) The Employment Agreement was for a five-year term, which then continued on a year-to-year basis upon the same terms and conditions. (Id.) The Employment Agreement binds successor corporations, which plaintiff alleges includes ServiceMaster. (Id. ¶ 6 [citing Employment Agreement, Ex. A to Compl., ¶ 10]).

The Employment Agreement protects plaintiff's employment with ServiceMaster. (Id. ¶ 7.) The Agreement permits ServiceMaster to terminate plaintiff for "cause" based upon a "willful and material breach," "gross negligence" or "willful dishonesty, fraud or misconduct." (Id.) Further, ServiceMaster is required to provide plaintiff with 10 days written notice and an opportunity to cure any willful and material breach of the Employment Agreement before termination. (Id.)

In 2001, plaintiff received a Change in Control Severance Agreement ("CIC") as part of his executive compensation package.

---

[2] The facts of this case are taken from plaintiff's allegations in the first amended complaint, filed August 23, 2007 (Docket #21). Plaintiff originally filed this action on March 30, 2007. ServiceMaster moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6); ServiceMaster did not move at this time to compel arbitration. On August 2, 2007, the court granted in part and denied in part ServiceMaster's motion to dismiss. (Docket #20). Plaintiff was given leave to file a first amended complaint.

(Id. ¶ 8.)  The CIC was designed to provide protection to ServiceMaster's management team in the event of certain reorganizations, mergers, or acquisitions.  (Id.)  In 2005, plaintiff was granted a restricted stock award of 10,000 shares under the ServiceMaster 2003 Equity Incentive Plan.  (Id. ¶ 15.)  The 2005 stock award was given pursuant to the terms of The ServiceMaster Company Restricted Stock Award Agreement.  Plaintiff also alleges he was promised, both orally by Rick Ascolese ("Ascolese") and in a written memorandum, that he would receive restricted stock awards of 10,000 shares in 2006, 10,000 shares in 2007, and 8,000 shares in 2008.  (Id.)

ServiceMaster announced on November 28, 2006 that its Board of Directors had decided to explore strategic alternatives designed to maximize value for shareholders.  (Id. ¶ 18.)  In January and February of 2007, plaintiff discussed his 2006 bonus and expressed concerns to his immediate supervisor, Ascolese, that he had not received his 2007 restricted stock award of 10,000 shares.  (Id. ¶ 19.)  Plaintiff did not receive an answer, and plaintiff again pressed Ascolese for information about the stock award on February 19 and 20, 2007.  (Id.)  Plaintiff did not receive a definitive answer, and Ascolese told him that there were "many unknowns as it relates to the potential change in control."  (Id.)

ServiceMaster terminated plaintiff's employment without notice on March 8, 2007.  (Id.)  The termination was allegedly for "cause" and was effective March 15, 2007.  (Id. ¶ 21.)  On March 19, 2007, ServiceMaster announced that it had entered into

3

1  a merger agreement to be acquired by an investment group.  (Id.
2  ¶ 24.)
3      Plaintiff alleges that ServiceMaster's Board of Directors
4  was aware of a change in control or attempted change in control
5  prior to his termination.  (Id. ¶ 20.)  Plaintiff further
6  alleges that there was no cause for his termination and that the
7  true reason for his termination was to deny him compensation due
8  and owing from ServiceMaster.  (Id. ¶ 21.)
9      More specifically, plaintiff alleges that ServiceMaster's
10 actions in terminating plaintiff are in breach of both the CIC
11 and the restricted stock agreement.  As such, plaintiff contends
12 that he is due all benefits under both agreements. (Id. ¶¶ 25-
13 27.)  Furthermore, plaintiff contends ServiceMaster did not fully
14 compensate him following his wrongful termination in violation of
15 California Labor Code sections 201 and 227.3.  (Id. ¶ 28.)
16 ServiceMaster, plaintiff alleges, also failed to pay for
17 plaintiff's vacation time earned but not used and failed to
18 provide plaintiff with his restricted stock award for 2007.
19 (Id.)
20     On March 30, 2007, plaintiff filed this civil action against
21 defendant, alleging seven claims for relief.  Defendant now moves
22 to compel arbitration of plaintiff's claims, as stated in the
23 first amended complaint, for (1) wrongful termination in
24 violation of public policy; (2) breach of written contract for
25 the CIC; (3) breach of written contract for the restricted stock
26 award; (4) breach of the covenant of good faith and fair dealing,
27 (5) failure to pay wages due; (6) intentional infliction of
28

4

emotional distress; and (7) declaratory relief, pursuant to the Federal Arbitration Act ("FAA").

## STANDARD

Employment contracts are governed by the FAA. 9 U.S.C. § 1, *et seq*; Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 269 (1995).[3] Questions concerning the interpretation and enforceability of arbitration agreements subject to the FAA are determined by federal standards. Moses H. Cone Memorial Hosp. v. Mercury Constr., 460 U.S. 1, 22-24 (1983); see Slaughter v. Stewart Enters., Inc., 2007 WL 2255221, at *2 (N.D. Cal. Aug. 3, 2007) ("Federal substantive law governs the question of arbitrability."). However, courts apply ordinary state law contract principles in deciding whether the parties agreed to arbitrate a particular dispute in the first place.[4] First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

In ruling on a petition to compel arbitration, the court's inquiry is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

---

[3] Although the Act does not confer jurisdiction, the court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

[4] Paragraph 15 of the Employment Agreement states the contract "shall . . . be construed according to the laws of the State in which the Company's headquarters are located on the date hereof as shown in the Company's address for notices set forth in Section 12 hereof." Paragraph 12 of the Employment Agreement indicates Four Seasons' headquarters were in California at the time of execution. (Ex. A, Employment Agreement at ¶ 12). Therefore, California law applies in this case. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) ("to evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern formation of contracts.").

encompasses the dispute at issue.  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the finding is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms.  Simula, 175 F.3d at 719.

In determining the validity of an agreement, the court considers whether the arbitration clause is procedurally and substantively unconscionable.  Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).  Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power between the parties.  Armendariz v. Foundation Health Psychcare Services, 24 Cal. 4th 83, 114 (2000) (quoting A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982)).  "A contract is oppressive if an inequality of bargaining power . . . precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract."  Ingle, 328 F.3d at 1171.  "Surprise" references the extent to which the terms of the bargain are drafted by the party seeking to enforce the contract and whether terms are hidden in the prolix printed form. Id. (citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997)).  Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*."  Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1043 (9th Cir. 2001) (emphasis in original).  In evaluating the substance of a contract, courts must analyze the terms of the contract as of "the time [it] was made."  A&M Produce Co., 135 Cal. App. 3d at 487.

1    In determining whether the arbitration clause encompasses
2 the dispute at issue, the Ninth Circuit has generally held
3 arbitration clauses to be "expansively interpreted."  <u>Simula,</u>
4 <u>Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 721 (9th Cir. 1999).
5 Therefore, a plaintiff's allegations need only "touch matters"
6 covered by the contract containing the arbitration clause.
7 <u>Simula, Inc.</u>, 175 F.3d at 721 (citing <u>Mitsubishi Motors Corp. v.</u>
8 <u>Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 624 n. 13 (1985)).

**ANALYSIS**

**A.   Validity of the Arbitration Clause**

The arbitration provision of the Employment Agreement provides, in pertinent part:

> [w]ith the exception of the provisions hereof providing for enforcement by means of equitable remedies, any unresolved dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration, conducted before a panel of three (3) arbitrators in Houston, Texas, in accordance with the National Rules for the Revolution of Employment Disputes of the American Arbitration Association ("AAA") . . . (Ex. A to FAC, Employment Agreement ¶ 14)

Plaintiff concedes by his own allegations in the first amended complaint that the Employment Agreement is valid and enforceable. (<u>See e.g.</u> FAC ¶¶ 5, 6, 7, 22 [alleging that plaintiff is a party to the Employment Agreement, that the Agreement is binding as between plaintiff and ServiceMaster, and that ServiceMaster, per the express terms of the Agreement, may only terminate plaintiff under certain conditions]).  These allegations are incorporated and re-alleged in each of plaintiff's substantive claims for relief.  (<u>Id.</u> ¶¶ 30, 35, 40, 45, 49, 52, 57).

7

1    Nevertheless, despite these allegations, plaintiff *now*
2 contends that the arbitration clause is unenforceable as
3 unconscionable because it precludes him from recovering punitive
4 damages.  (Pl.'s Opp'n to Mot., filed Oct. 26, 2007 ("Opp'n"), at
5 11).  Courts have warned against arbitration clauses in
6 employment agreements.  See Ingle, 328 F.3d at 1172-73;
7 Armendariz, 24 Cal. 4th at 114-15.  In particular, arbitration
8 clauses that require only one party to arbitrate disputes have
9 been found to be unconscionable.  See Armendariz, 24 Cal. 4th at
10 117 (holding at a minimum a "modicum of bilaterality" is
11 necessary in arbitration agreements); Kinney v. United HealthCare
12 Services Inc., 70 Cal. App. 4th 1322, 1132 (1999) (holding a
13 "unilateral obligation to arbitrate is itself so one-sided as to
14 be substantively unconscionable").  Other factors that may
15 indicate unconscionability include a forum selection clause of
16 the employer's choice and preventing full recovery of damages by
17 employees, while placing no such restriction on employers.  See
18 Armendariz, 24 Cal. 4th at 120-21.

19    However, unlike in Armendariz, mutuality exists in the
20 present case.  Both parties are held to arbitration.  Morever,
21 plaintiff has alleged no harm resulting from the choice of forum
22 contained in the arbitration clause.  Cf. Armendariz, 24 Cal. 4th
23 at 119-20.  While defendant has not provided "justification" for
24 requiring disputes to be arbitrated in Houston, Texas,
25 plaintiff's opposition suggests the forum is the result of
26 defendant's acquisition of a Delaware corporation based in
27 Houston.  (Opp'n at 1-2).  This is a sufficiently reasonable
28 explanation for holding the arbitration in Houston.  See

8

*Armendariz*, 24 Cal. 4th at 120 ("[i]f an employer . . . [has] reasonable justification for the arrangement . . . such an agreement would not be unconscionable.").

Furthermore, contrary to plaintiff's contention, bilaterally precluding punitive damages is not enough to "shock the conscience" and render the agreement substantively unconscionable. While the arbitration clause prevents recovery of punitive damages, *both parties* are similarly precluded. Therefore, plaintiff's reliance on *Armendariz* is unfounded. In *Armendariz*, the arbitration clause in question was held to be unconscionable because the employee's damages were limited but the employer's damages were not. *Armendariz*, 24 Cal. 4th at 121.

Lastly, plaintiff relies on *Armendariz* to argue that the arbitration agreement improperly limits statutorily imposed remedies such as punitive damages. Only plaintiff's fifth claim for relief is based on a statute. Plaintiff's claim for failure to pay wages due arises under California Labor Code §§ 201, 227.3. However, neither of these sections provide for punitive damages against violators. Therefore, the punitive damages clause of the arbitration agreement would not preclude any remedy plaintiff may be entitled to under statute.

Thus, for all of the above reasons, the court finds the arbitration clause binding and enforceable.

**B.   Coverage of the Arbitration Clause**

The Employment Agreement requires arbitration of "any unresolved dispute or controversy arising under or in connection with this Agreement." (Ex. A to FAC, Employment Agreement

9

¶ 14). Plaintiff relies on Necchi v. Necchi Sewing Machine Sales Corp., 348 F.2d 693 (2d Cir. 1965) to argue this clause should be narrowly construed and limited to matters arising directly from the contract. (Opp'n at 7). However, the Ninth Circuit has held language of this sort to be "expansively interpreted." See Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (concluding phrase "arising in connection with" suggests a broader scope than "arising out of" or "arising under") (citing Good(E) Bus. Sys., Inc. v. Raytheon Co., 614 F. Supp. 428, 429 (W.D. Wis. 1985)). As such, the phrase "'[a]rising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Simula, Inc., 175 F.3d at 721. Therefore, plaintiff's allegations need only "touch matters" covered by the Employment Agreement. Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13 (1985)).

Here, each of plaintiff's claims hinge on the validity and enforceability of the Employment Agreement. (FAC ¶¶ 5, 6, 7, 22). Moreover, plaintiff's claims each specifically incorporate the Employment Agreement. (Id. ¶¶ 30, 35, 30, 45, 49, 52, 57) Therefore, plaintiff's claims all sufficiently "touch matters" covered by the Employment Agreement. See Boucher v. Alliance Title Co., Inc., 127 Cal. App. 4th 262, 272 (2005) (as in Boucher, plaintiff's claims "rely on, make reference to, and presume the existence of" the employment agreement).

Specifically, plaintiff's first claim for relief for wrongful termination in violation of public policy asserts that

10

defendant terminated plaintiff "in order to avoid paying his wages and compensation." (Id. ¶ 31).  Plaintiff's claim necessarily requires a determination of the compensation plaintiff may be entitled, as an employee, under Section 2 of the Employment Agreement.  As such, this claim is subject to arbitration.

Plaintiff's second claim for relief alleges defendant breached the CIC by failing to provide plaintiff with notice of plaintiff's alleged breach of his duties and responsibilities; failing to provide plaintiff with a reasonable opportunity to remedy the alleged breach; and wrongfully terminating plaintiff without cause and in violation of public policy.  (FAC ¶ 37).  Plaintiff argues the CIC contains the explicit terms governing his employment, including the procedures and standards for termination, and that this agreement, unlike the Employment Agreement, does not contain an arbitration clause.  (Opp'n at 8 [citing CIC, ¶ 1(c)(1)]).

That the CIC itself does not contain an arbitration clause is of no consequence to the motion because the factual allegations underlying plaintiff's claim that the CIC was breached "touches matters" covered by the Employment Agreement. For example, plaintiff's first amended complaint alleges his "exemplary" job performance led to the *Employment Agreement,* and that the CIC constituted "part of his executive compensation package." (FAC ¶¶ 5, 8).  Plaintiff further alleges that his "accomplishments as an *employee* of ServiceMaster [under the Employment Agreement]" and his generally "outstanding performance in 2004" warranted the stock award.  (Id. ¶¶ 14, 15) (emphasis

11

added).  Plaintiff cannot now excise the Employment Agreement from his complaint.  Therefore, plaintiff's second claim for relief for breach of the CIC sufficiently touches matters encompassed by the Employment Agreement and is thus also subject to arbitration.

Plaintiff's third claim for relief for breach of the restricted stock agreement alleges defendant failed to pay plaintiff the benefits due under the agreement.  (Id. ¶ 41).  Plaintiff contends he performed all the terms and conditions required under the agreement until he was wrongfully terminated.  However, as noted above, plaintiff's duties as an employee, his compensation, and termination are all issues encompassed by the Employment Agreement.  Indeed, both the CIC and stock agreement are necessarily intertwined with the Employment Agreement.  Contrary to plaintiff's bald assertion, it is the Employment Agreement, and *not* the CIC, that delineates "all the necessary terms of [plaintiff's] employment."  (Opp'n at 10).  Therefore, this claim is likewise subject to arbitration.

Plaintiff's fourth claim for relief alleges breach of the covenant of good faith and fair dealing.  Plaintiff argues that since the standards for "cause" are sufficiently set forth in the CIC, reference to the Employment Agreement is unnecessary.  (Opp'n at 8-9).  However, this claim is derivative of the second and third claims for breach of contract.  As such, it is also subject to arbitration.

Plaintiff's fifth claim for relief for failure to pay wages due alleges defendant "was required to make payment of wages upon cessation of employment."  (FAC ¶ 50).  Plaintiff's claim touches

12

upon the circumstances of his termination.  Moreover, plaintiff's claim rests on a determination of the wages due to him under the Employment Agreement.  See Simula, Inc., 175 F.3d at 724-25 (holding independent tort claims derived from non-disclosure agreements lacking arbitration clauses were nonetheless subject to arbitration since parties entire relationship was dependent on contract containing arbitration clause).  Consequently, plaintiff's fifth claim for relief is subject to arbitration.

Plaintiff's sixth claim for relief for intentional infliction of emotional distress alleges defendant's termination of plaintiff's employment was "extreme and outrageous."  While plaintiff contends reference to the Employment Agreement is unnecessary, plaintiff's allegations require a determination of the compensation due to him under the Employment Agreement.  Moreover, adjudication of the claim will likely require a determination of whether defendant's termination of plaintiff was just under the Employment Agreement.  See Mathis v. Pacific Gass & Electric Co., 75 F.3d 498, 505 (9th Cir. 1996) (noting that party's exercise of its contractual rights can only rarely form the basis of a claim for intentional infliction of emotional distress).  For these reasons, this claim is subject to arbitration.

Finally, plaintiff's seventh claim for relief for declaratory judgment seeks a determination that defendant is bound by the employment, control and stock agreements.  This claim *directly* concerns the Employment Agreement and therefore is subject to arbitration.

13

**CONCLUSION**

For the foregoing reasons, defendant's motion to compel arbitration and to stay plaintiff's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, is GRANTED. The Clerk of the Court is directed to enter a stay of this action in its entirety pending resolution of the underlying arbitration proceedings.[5]

IT IS SO ORDERED.

DATED: November 14, 2007.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Defendant's motion to dismiss amended causes of action, currently set for hearing on November 30, 2007, is DENIED as moot and the hearing on said motion is VACATED.